1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
--------------------------------:
                                :
UNITED STATES OF AMERICA         :
                                :
                                :
    -vs-                         :    Case No. 1:16-cr-289
                                :
                                :
ZACHARY L. SHAMES,              :
            Defendant.          :
                                :
--------------------------------:
```

PLEA HEARING

January 13, 2017

Before:   Liam O'Grady, USDC Judge

APPEARANCES:

Kellen S. Dwyer and Ryan K. Dickey,
Counsel for the United States

Thomas C. Hill, Kevin J. Quilty and Fabio Leonardi,
Counsel for the Defendant

The Defendant, Zachary L. Shames, in person

1           THE CLERK:  The United States versus Zachary Shames,
2  case number 16-cr-289.
3           MR. DWYER:  Good morning, Your Honor.  Kellen Dwyer
4  and Ryan Dickey for the United States.
5           THE COURT:  All right.  Good morning.
6           MR. HILL:  Good morning, Your Honor.  Thomas Hill on
7  behalf of Mr. Shames from Pillsbury Winthrop Shaw Pittman.  I
8  have with me my colleagues Kevin Quilty, who is a member of
9  this court, and Fabio Leonardi.  And I believe we have pending
10 motions pro hac before the Court.
11          THE COURT:  All right.
12          MR. HILL:  Thank you.
13          THE COURT:  Good morning to each of you.
14          MR. LEONARDI:  Good morning, Your Honor.
15          MR. QUILTY:  Good morning.
16          THE COURT:  I believe I have signed those, and I
17 can't promise, but you are welcome here this morning.
18          MR. HILL:  Thank you, Your Honor.
19          THE COURT:  All right.  This comes for entry of a
20 plea.  Are the parties ready to proceed?
21          MR. HILL:  We are, Your Honor.
22          MR. DWYER:  Yes, Your Honor.
23          THE COURT:  All right.  May I have the originals of
24 the agreement and the waiver of indictment.
25          Mr. Dickey, how are things over there in the big

1   Department of Justice?  Are you getting along all right?
2              MR. DICKEY:  They are going well, Judge, thanks.  Not
3   quite as well as when I was here, but they're going fine.
4              THE COURT:  Well, you made the decision to leave.
5   There must have been something over there that you were
6   interested in.
7              MR. DICKEY:  Yes, sir.
8              THE COURT:  All right.  Well, we all make mistakes.
9              All right.  Mr. Shames, please come to the podium and
10  be sworn, sir.
11             NOTE:  The defendant is sworn.
12             THE COURT:  All right.  Good morning, Mr. Shames.
13             THE DEFENDANT:  Good morning, Your Honor.
14             THE COURT:  How old are you?
15             THE DEFENDANT:  21.
16             THE COURT:  And you are presently at JMU?
17             THE DEFENDANT:  Correct.
18             THE COURT:  All right.  Are you under the influence
19  of any medication which would make it difficult for you to
20  understand my questions today?
21             THE DEFENDANT:  No, Your Honor.
22             THE COURT:  Have you told your counsel, Mr. Hill,
23  everything about this case so he could represent you to the
24  best of his ability?
25             THE DEFENDANT:  Yes, Your Honor.

4

1            THE COURT: And have you gone over the plea
2 agreement, and the statement of facts, and the waiver of
3 indictment, and the criminal information carefully yourself,
4 sir?
5            THE DEFENDANT: Yes.
6            THE COURT: And also discussed it with your counsel?
7            THE DEFENDANT: Yes, Your Honor.
8            THE COURT: And do you need any -- did Mr. Hill
9 answer any questions you had about the information in these
10 documents?
11            THE DEFENDANT: Yes.
12            THE COURT: All right. Do you need any more time to
13 speak with him now before we move forward?
14            THE DEFENDANT: No, Your Honor.
15            THE COURT: Give me a second, I can't find the
16 criminal information in this packet.
17            Well, I still can't find it. Do you all have a
18 criminal information, a copy of it?
19            MS. DWYER: We should have another copy.
20            MR. HILL: I think we do too. I have it, Your Honor.
21            THE COURT: Okay. Thank you.
22            Mr. Shames, you understand that you have been charged
23 by criminal information with between August of 2013 through
24 March 17 of 2015 in the Eastern District of Virginia and
25 elsewhere with knowingly and intentionally aiding and abetting

1  the commission of computer intrusions, in violation of Title
2  18, section 1030?
3           And in particular, that you designed, marketed, and
4  sold certain malicious Keylogger software knowing that that
5  software was going to be used to knowingly cause the
6  transmission of a program, information, code, or command, and
7  as a result of that such conduct, intentionally caused damage
8  without authorization to ten or more protected computers during
9  a one-year period, in violation of Title 18, section 1030.
10           Do you understand that, sir?
11           THE DEFENDANT:  Yes, Your Honor.
12           THE COURT:  All right.  And you have gone over the
13  elements of that charge necessary to prove you guilty with your
14  counsel?
15           THE DEFENDANT:  Yes.
16           THE COURT:  All right.  Do you understand that you
17  have a right to require the Government to formally charge you
18  through the grand jury if you wish?
19           THE DEFENDANT:  Yes, Your Honor.
20           THE COURT:  Do you understand that a grand jury is
21  made up of approximately two-dozen members of our community?
22  And they would hear evidence from a witness who was under oath,
23  and a majority would have to believe that there was probable
24  cause to believe that you committed this offense before you
25  would be formally indicted?

1    THE DEFENDANT: Yes, Your Honor.
2    THE COURT: All right. And you have a right to waive
3 that if you wish and proceed by criminal information, which has
4 now been filed in this case.
5    Do you understand that as well?
6    THE DEFENDANT: Yes, Your Honor.
7    THE COURT: And you have spoken with Mr. Hill about
8 the grand jury process and agreed to waive that process and
9 appear here by criminal information today?
10   THE DEFENDANT: Correct.
11   THE COURT: All right. Thank you. I find that
12 you've knowingly and voluntarily waived your right to the grand
13 jury proceeding.
14   You have a right to plead not guilty to the criminal
15 information and require the Government to prove its case
16 against you beyond a reasonable doubt.
17   Do you understand that?
18   THE DEFENDANT: Yes.
19   THE COURT: And you have a right to a jury trial if
20 you wish where 12 members of our community would hear evidence,
21 and only if they unanimously found you guilty beyond a
22 reasonable doubt would you be convicted.
23   Do you understand that?
24   THE DEFENDANT: Yes, Your Honor.
25   THE COURT: Do you understand that if there was a

1  trial, the Government would be required to put witnesses on the
2  stand.  They would be under oath and subject to
3  cross-examination by Mr. Hill.  You would have a right to
4  contest the evidence the Government sought to admit against
5  you.  You would have a right to testify in a trial if you
6  wished and an absolute right not to testify if you did not wish
7  to.  And the jury couldn't infer your guilt because you didn't
8  testify.  You would have a right to use the power of the Court
9  to compel witnesses to attend and testify on your behalf.  And
10 you would have a right to counsel at every stage of the
11 proceedings against you.
12          Do you understand those rights?
13          THE DEFENDANT:  Yes, Your Honor.
14          THE COURT:  And you discussed your right to plead not
15 guilty and have the case tried with Mr. Hill and have decided
16 to waive that right and plead guilty here instead?
17          THE DEFENDANT:  Yes.
18          THE COURT:  Do you understand that the maximum
19 penalty for a violation of or for aiding and abetting the
20 computer intrusion is a maximum of ten years of imprisonment, a
21 fine, restitution, forfeiture of proceeds of the crime, and
22 three years of supervised release?
23          THE DEFENDANT:  Yes, Your Honor.
24          THE COURT:  Do you understand that supervised release
25 is a period of probation which begins after you have served any

8

1  term of incarceration?  If you're found to be in violation of
2  the conditions of that supervised release, you could be ordered
3  back to the penitentiary for its full length.
4              Do you understand that?
5              THE DEFENDANT:  Yes, Your Honor.
6              THE COURT:  All right.  Do you understand that I am
7  not going to sentence you today, I am going to order a
8  presentence report which will tell me much more than I know
9  about you now, and it also will contain a Sentencing Guideline
10 calculation that I consider in determining the appropriate
11 sentence.
12             Do you understand that?
13             THE DEFENDANT:  Yes, Your Honor.
14             THE COURT:  Do you understand your counsel and the
15 Government have entered into agreements concerning certain of
16 the Guideline calculations and agreed to argue the remaining
17 Guideline calculations -- Guideline provisions which are
18 disputed?
19             The Probation Office will come up with their own
20 determination, and then on your date of sentencing there will
21 be argument and I'll decide what the proper Guideline range is
22 on the day of sentencing.
23             Do you understand that?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  And do you understand that I am not bound

9

1  by the portions of the Sentencing Guideline calculation that
2  your counsel and the Government have agreed to?
3          THE DEFENDANT:  Yes, Your Honor.
4          THE COURT:  All right.  Do you understand that you
5  have in this agreement waived your right to appeal your
6  conviction on this offense as well as any sentence that I
7  impose as long as it's a lawful sentence?
8          THE DEFENDANT:  Yes.
9          THE COURT:  And do you understand that you have
10 agreed to make restitution in an amount that has not been
11 determined, and that you have waived the 90-day provision that
12 would require restitution to be established more quickly?
13         Do you understand that?
14         THE DEFENDANT:  Yes, Your Honor.
15         THE COURT:  All right.  You have agreed to cooperate
16 in the ongoing investigation of these matters with the
17 Government.
18         THE DEFENDANT:  Yes, Your Honor.
19         THE COURT:  Do you understand that will require you
20 to be debriefed by law enforcement on one or more occasions,
21 may require you to testify in a grand jury, produce documents
22 or electronic files they believe you might have, and even
23 testify in any trials that they wish you to?
24         Do you understand that?
25         THE DEFENDANT:  Yes, Your Honor.

1  THE COURT: Are you willing to do that?
2  THE DEFENDANT: Yes.
3  THE COURT: All right. And that requires your
4 cooperation to be truthful and to be complete.
5  THE DEFENDANT: Yes.
6  THE COURT: All right. Do you understand that the
7 Government has agreed not to further criminally prosecute you
8 for the specific conduct in the criminal information based on
9 your plea of guilty to this offense?
10  THE DEFENDANT: Correct.
11  THE COURT: Is there any other jurisdiction which is
12 looking into possible charges against Mr. Shames?
13  MS. DWYER: Not to my knowledge, Your Honor.
14  THE COURT: All right. Do you understand that there
15 aren't any other investigations that the Eastern District of
16 Virginia or the Justice Department are aware of, but if there
17 was another jurisdiction looking into this conduct, that the
18 U.S. Attorney's Office here would attempt to dissuade any
19 further prosecution for this conduct, but they might not be
20 able to lawfully prevent it, and they also could not prevent
21 the use of the cooperation information and the cooperation that
22 you're giving to be used against you in that other
23 jurisdiction?
24  Do you understand that?
25  THE DEFENDANT: Yes, Your Honor.

1  THE COURT: All right. Do you understand that you
2 have also agreed to forfeit an amount of at least $60,993,
3 which is the proceeds that the Government believes that you
4 acquired from the sale of this software?
5  Do you understand that?
6  THE DEFENDANT: Yes, Your Honor.
7  THE COURT: All right. Do you understand that
8 whether or not your cooperation rises to a level of substantial
9 assistance which would entitle you to a downward departure from
10 any sentence imposed or that would be imposed, is a matter that
11 the U.S. Attorney's Office will determine after your
12 cooperation is complete?
13  THE DEFENDANT: Yes, Your Honor.
14  THE COURT: Okay. Did you go over the statement of
15 facts carefully?
16  THE DEFENDANT: Yes.
17  THE COURT: And is it accurate?
18  THE DEFENDANT: It is.
19  THE COURT: Do you disagree with any of the
20 information in the statement of facts?
21  THE DEFENDANT: No, Your Honor.
22  THE COURT: All right. Well, I won't go over all of
23 the information in the statement of facts, but is it correct
24 that between January of -- well, at least August of 2013
25 through March 17 of 2015, that you did aid and abet the

1  commission of computer intrusions; is that correct?
2          THE DEFENDANT:  Yes, Your Honor.
3          THE COURT:  And that you enrolled at JMU back in the
4  fall of 2013; is that correct?
5          THE DEFENDANT:  Yes, Your Honor.
6          THE COURT:  And you ran this business both from your
7  dorm and then at your parents' home in the Eastern District of
8  Virginia?
9          THE DEFENDANT:  Yes, Your Honor.
10         THE COURT:  All right.  And that sometime around
11 January of 2012 you developed and then marketed and sold
12 Keylogger software which would enable one to access without
13 authorization sensitive information, such as passwords on
14 computers on which the software was installed; is that correct?
15         THE DEFENDANT:  Yes, Your Honor.
16         THE COURT:  And that that Keylogger software would
17 give one the ability to recover key strokes on the victim's
18 computer, recover passwords, clear Web browser cookies, send
19 screen shots, and also give the ability to spread that software
20 to other electronic services during that period of time; is
21 that correct?
22         THE DEFENDANT:  Correct.
23         THE COURT:  And that you sold that Keylogger or
24 versions of that Keylogger to over 3,000 users, which
25 ultimately resulted in the infection of at least 16,000-plus

1  computers; is that correct?

2          THE DEFENDANT: Yes, Your Honor.

3          THE COURT: And that you sold the Keylogger for

4  anywhere from 15 to $40, and in one instance customized

5  customer specifications and sold it for $150.

6          THE DEFENDANT: Correct, Your Honor.

7          THE COURT: And that you received at least $60,993

8  for the sale of the Keylogger?

9          THE DEFENDANT: Yes, Your Honor.

10         THE COURT: All right. And that you also assisted

11 your customers after sale by providing support via e-mail and

12 Skype and even a YouTube video; is that correct?

13         THE DEFENDANT: Correct.

14         THE COURT: All right. How do you plead to the

15 criminal information which, as I said, charges you with aiding

16 and abetting the commission of computer intrusions, guilty or

17 not guilty, sir?

18         THE DEFENDANT: Guilty, Your Honor.

19         THE COURT: All right. Mr. Hill, have you gone over

20 the facts of the case with Mr. Shames?

21         MR. HILL: I have, Your Honor.

22         THE COURT: And gotten discovery from the Government?

23         MR. HILL: I have Your Honor.

24         THE COURT: And do you believe that Mr. Shames' plea

25 is knowingly and voluntarily made today?

1　　　　　　MR. HILL: Yes, Your Honor.

2　　　　　　THE COURT: And that there is a basis in fact for it?

3　　　　　　MR. HILL: There is. And I would just for the Court because I noticed the Court I think saw the discrepancy between the start date as reflected in the statement of facts and the information.

7　　　　　　THE COURT: Yes, sir.

8　　　　　　MR. HILL: I think the Government chose his 18th birthday in the information although --

10　　　　　THE COURT: Conduct itself --

11　　　　　MR. HILL: -- much of the conduct occurred in high school beginning in 2012.

13　　　　　THE COURT: Thank you for clearing that up.

14　　　　　All right. Based on the plea agreement, and the statement of facts, and Mr. Shames' answers to my questions, and those of counsel, I will find him guilty of the criminal information. I will order a presentence report.

18　　　　　I will continue the matter. How does April 28 --

19　　　　　MR. HILL: Your Honor, if I might. And I've discussed this with the Government, and I'm told the Government has no objection --

22　　　　　THE COURT: He's in school.

23　　　　　MR. HILL: If the Court would allow -- as the Court notes, Mr. Shames is enrolled as a full-time student at JMU, and he's also enrolled in what is referred to the Maymester,

15

1  which is a -- as I understand, it's a one-month sort of
2  additional semester.
3             So we would request a sentencing date in June, Your
4  Honor.
5             THE COURT:  All right.  There is no objection to
6  that, right?
7             MS. DWYER:  No objection, Your Honor.
8             THE COURT:  How about the 16th of June?
9             MR. HILL:  That would be agreeable, Your Honor.
10            MS. DWYER:  Works for the Government.
11            THE COURT:  9 a.m. then.  It's a Friday at 9 a.m.  As
12 I said, I will order a presentence report.
13            Is this Mr. Shames' first appearance?
14            MR. HILL:  Yes, Your Honor.
15            THE COURT:  All right.  I've got a Pretrial Services
16 report.  Does the Government have any objection to conditions
17 of release for Mr. Shames?
18            MS. DWYER:  No objection, Your Honor.
19            THE COURT:  All right.
20            MR. HILL:  Your Honor, may I be heard?
21            THE COURT:  Yes.
22            MR. HILL:  With respect to the third condition, I
23 discussed this this morning with the Government, and I'm told I
24 can represent to the Court that the Government would not have
25 requested that.  It's much more -- it's, frankly, logistical in

1  large measure.  He is a computer science major.  And he's been
2  actively cooperating with the Government.  He is going to
3  continue to the extent the Government wants his active
4  cooperation.  He understands, he hasn't been involved in these
5  activities for some time.  And I would request that the
6  computer monitoring not be made a condition.
7         THE COURT:  What detriment do you think that that is
8  going to impose on his ability to use his computer?  As I
9  understand it, it just gives Pretrial Services the opportunity
10 to monitor, if they wish to, what's going on and allows them --
11        MR. HILL:  I'm not suggesting that.  I don't think it
12 would impede it.  It's, frankly, much more of a logistical
13 sense.  First of all, he is going back to school, hopefully,
14 shortly.  The computer isn't here, for one thing.
15        And I think, I'm certainly not a computer science
16 person myself, but I think he has access and uses as part of
17 his studies other computers.  And as it's currently referenced,
18 it's generic to all computers.
19        THE COURT:  So he's using more than one computer?
20        MR. HILL:  Yeah, I believe so, Your Honor.
21        THE COURT:  Is that right, Mr. Shames?  How many
22 computers are you using in your studies?
23        THE DEFENDANT:  We have lab rooms, so I--
24        THE COURT:  I am sorry?
25        THE DEFENDANT:  We have lab rooms, so I use those

computers, but those are not my computers. Other than that, I just use mine.

THE COURT: Okay. All right. Well, he's going to be supervised by the Harrisonburg Division of Pretrial Services. So there is no need for him to bring his computer back up here.

I'm going to release him on a $25,000 personal recognizance bond. I'm going to order that he be supervised by Pretrial Services. I'll order that he submit to substance abuse testing and treatment as directed by Pretrial Services.

And also, that he allow the installation of monitoring software on his personal computer. And that will only go to his personal computer and not any of the JMU computers that would be used in a lab or otherwise. And if there is a problem with that, then you let Pretrial Services know and they'll call me and see whether we modify that. But I think it's appropriate at the present time, given the length of time that Mr. Shames was involved in this conduct, and also the number of customers that he had. And I don't know whether or not that's active or not, but I think it's appropriate.

So if there is a problem, you let me know and I will reconsider, but I think right now we're going to impose that software monitoring requirement.

MR. HILL: Okay. Obviously, Your Honor, there is some period of time to get that physically accomplished.

THE COURT: Yes, I understand that. And they'll set

```
 1   it up and accommodate your schedule for that.
 2           MR. HILL:  Okay.  Thank you, Your Honor.
 3           THE COURT:  All right.  Anything else?  If you will
 4   go over the conditions of release and then take Mr. Shames down
 5   the Pretrial Services.
 6           MR. HILL:  Okay.
 7           THE COURT:  All right.
 8           MR. HILL:  Thank you, Your Honor.
 9           THE COURT:  All right.  Thank you.
10           MS. DWYER:  Thank you, Your Honor.
11           MR. DICKEY:  Thank you, Judge.
12   -------------------------------------------------
                       HEARING CONCLUDED
13
```

         I certify that the foregoing is a true and
      accurate transcription of my stenographic notes.


                          /s/   Norman B. Linnell
                        Norman B. Linnell, RPR, CM, VCE, FCRR